# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **CYNTHIA L. BREWER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.:  5:10-CV-341-VEH |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner,** | ) |
| **Social Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## **MEMORANDUM OPINION**[1]

Plaintiff Cynthia L. Brewer ("Ms. Brewer") brings this action pursuant to 42 U.S.C. § 416(i), § 216(i) of the Social Security Act (the "Act").  She seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), who denied her application for Disability Insurance Benefits ("DIB").  Ms. Brewer timely pursued and exhausted her administrative remedies available before the Commissioner.  The case is ripe for

---

[1] The undersigned has recently rendered another comparable disability decision from which the framework, analysis, and disposition of this case persuasively flow. *See Choate v. Astrue*, No. 2:09-CV-2385-VEH, (Docs. 12, 13) (N.D. Ala. Nov. 2, 2010) (finding no error in application of Eleventh Circuit pain standard and affirming denial of disability claim under similar circumstances).

review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Act.

## **FACTUAL AND PROCEDURAL HISTORY**

Ms. Brewer was a 41-year-old female at the time of her hearing before the administrative law judge (the "ALJ") held on September 22, 2008. (Tr. 70, 36). Ms. Brewer completed high school, attended 1 year of college, and subsequently became a LPN. (Tr. 43, 88).

Ms. Brewer's prior work experience includes employment as an x-ray technician, medical records clerk, day care operator, practical nurse, pharmacy technician, cardiology technician, and receptionist. (Tr. 54, 101). Ms. Brewer maintains that she became disabled on March 2, 2006, due to degenerative disc disease, asthma, obesity, and arthritis. (Tr. 81).

Ms. Brewer protectively applied for DIB on September 8, 2006. (Tr. 70-72, 90). The DIB claim was denied initially on November 3, 2006. (Tr. 60). Ms. Brewer timely filed a request for a hearing that was received by the Social Security Administration on December 8, 2006. (Tr. 29-30). The hearing before the ALJ was held on September 22, 2008. (Tr. 36). The ALJ concluded Ms. Brewer was not disabled as defined by the Social Security Act and denied her DIB application on January 23, 2009. (Tr. 12-19).

Ms. Brewer filed a request for review of the ALJ's decision on February 5,

2009. (Tr. 7-8). On December 17, 2009, the Appeals Council denied review, which resulted in the final decision of the Commissioner being the ALJ's disability determination that was adverse to Ms. Brewer. (Tr. 1).

On February 16, 2010, Ms. Brewer filed her complaint with this court asking for review of the ALJ's decision. (Doc. 1). On September 3, 2010, Ms. Brewer filed a brief (Doc. 11) in support of her appeal, and on October 4, 2010, the Commissioner followed with his responsive brief. (Doc. 12). This court has carefully considered the record, and for the reasons stated below, affirms the Commissioner's denial of benefits.

## **STANDARD OF REVIEW**

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390 (1971); *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as

adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.*

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish her entitlement for a period of disability, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[2] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

---

[2] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through October 28, 2010.

(1)  whether the claimant is currently employed;
(2)  whether the claimant has a severe impairment;
(3)  whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)  whether the claimant can perform her past work; and
(5)  whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

### **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

The ALJ found Ms. Brewer had not engaged in substantial gainful activity since the alleged onset date of her disability, *i.e.*, March 2, 2006. (Tr. 14 ¶ 2). Thus, the claimant satisfied step one of the five-step test. 20 C.F.R. § 404.1520(b).

Under step two, the ALJ concluded that "[t]he claimant has the following

severe impairments: obesity and mild lumbar degenerative disk disease (DDD)."[3]
(Tr. 14 ¶ 3 (citations omitted)). Accordingly, the ALJ concluded that Ms. Brewer satisfied the second step of the sequential disability evaluative process. 20 C.F.R. § 404.1520(c).

At step three, the ALJ determined that Ms. Brewer did not have an impairment or a group of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16 ¶ 4). Ms. Brewer does not challenge this determination on appeal.

The ALJ then evaluated Ms. Brewer's RFC at step four, and found:

[W]ith no more than moderate pain, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with frequent use of the legs for pushing/pulling and frequent climbing, balancing, stooping, kneeling, crouching, crawling, and handling as set forth by Dr. Jampala at Exhibit 19F.

(Tr. 16 ¶ 5).[4] Further, the ALJ accepted the December 3, 2008, letter of the

---

[3] The ALJ also discussed Ms. Brewer's potential impairments of fibromyalgia and asthma, but found that the record evidence insufficiently supported a diagnosis of fibromyalgia (Tr. 15-16; *see also* Tr. 17 ("She saw Dr. Hernandez for a one-time visit in June 2008 when he ruled out fibromyalgia.") (emphasis added)). The ALJ expressly determined that Ms. Brewer's asthma was not severe because it had "resulted in no more than minimal limitations." (Tr. 16).

[4] The Regulations define light work as:

(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10

vocational expert which opined that "based on the assessment by Dr. Jampala," the claimant could still perform "her past employment as a Medical Records Clerk, Pharmacy Tech, and Receptionist" consistent with the RFC light level. (Tr. 18-19 (citing Exhibit 14E)).

Because of the ALJ's finding that Ms. Brewer did have relevant past work experience, it was unnecessary to continue to step five of the sequential analysis. (Tr. 18-19). Accordingly, the ALJ concluded Ms. Brewer was not disabled as defined by the Social Security Act "from March 2, 2006, the alleged onset date, through March 31, 2007, the date last insured" (Tr. 19 ¶ 7), and denied her DIB claim. (Tr. 19).

## **ANALYSIS**

This court is limited in its review of the Commissioner's decision in that the Commissioner's findings of fact must be reviewed with deference. *See Martin v.*

---

> pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (current through October 28, 2010).

*Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574-75 (11th Cir. 1986)). In contrast to factual findings, however, the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review. *See Martin*, 894 F.2d at 1529 (citing *Graham*, 790 F.2d at 1574-75); *Martin*, 894 F.2d at 1529 ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.") (citations omitted). In particular, this court has a "responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *See Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (emphasis added) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[5]

In this appeal, Ms. Brewer raises two primary issues. (*See* Doc. 10 at 8, 9). Ms. Brewer initially asserts that "[t]he ALJ's pain and credibility findings are not based on substantial evidence." (Doc. 10 at 8 (emphasis omitted)). Ms. Brewer secondarily maintains that "the ALJ erred in failing to develop the record for a medical expert review and opinion." (*Id.* at 9 (emphasis omitted)).

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**I.     THE ALJ EVALUATED THE CREDIBILITY OF MS. BREWER'S SUBJECTIVE COMPLAINTS OF DISABLING PAIN UNDER THE APPROPRIATE LEGAL STANDARD AND THE DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE.**

In order to satisfy the Eleventh Circuit pain standard, Ms. Brewer must prove "evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain." *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986) (citing *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985)). Further, "[w]hile both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (emphasis added).

In this case, the ALJ determined that Ms. Brewer had not met her burden. More specifically, the ALJ explained:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment.

(Tr. 17).

9

In *Wilson v. Barnhart*, the Eleventh Circuit reversed the district court's decision that the ALJ improperly applied the pain standard and found that the ALJ's decision was supported by substantial evidence because "the ALJ made a reasonable decision to reject Wilson's subjective testimony, articulating, in detail, the contrary evidence as his reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002). As the Eleventh Circuit discussed the ALJ's adequate credibility findings in *Wilson*:

> Moreover, the ALJ specifically enunciated the following findings:
>
> On or before December 31, 1987, [the date last insured,] there is no objective clinical evidence of a condition which could reasonably be expected to produce the level of pain, lack of balance, numbness, weakness, lack of bowel control, fatigue, frequent need to eat, frequent need for bowel movements, headaches, need for additional rest during the day, or other symptoms which [Wilson] alleges precluded him from working. <u>Such allegations are also inconsistent with activities of daily living, limited use of pain medication and effectiveness of treatment, and therefore are not found credible to the extent claimant was precluded from working</u>.
>
> Substantial evidence in the record supports the ALJ's finding, as the medical and other evidence simply was not consistent with Wilson's alleged disabling pain. The evidence shows that from December 1986, a year prior to Wilson's date last insured, through 1992, Wilson made visits for regular vitamin B12 shots, received treatment for a rash, had moles removed, and had an isolated instance of testicular enlargement. <u>It does not appear that Wilson complained of pain associated with the injuries received from his accident any time past his date last insured. Thus, Wilson cannot establish that he continuously met the pain standard from on or before December 31, 1987, his date last insured, to</u>

within one year of his application date.

*Id.*, 284 F.3d at 1226 (emphasis added).

Akin to the standard set forth in *Wilson*, the ALJ's partial negative credibility finding in this instance is supported by substantial evidence contained in the record. For example, later in his opinion, the ALJ observed the following inconsistencies in Ms. Brewer's subjective allegations of suffering from totally disabling pain:

> Dr. Bazzle's records show that on July 14, 2008, she had lost about 20 pounds and was feeling better with less fatigue.
> 
> . . .
> 
> The claimant's daily activities are also inconsistent with her allegations of disabling pain, but are fully consistent with the residual functional capacity described above. The claimant testified that she cooks and washes dishes, drives and takes her child to school, grocery shops, goes to the bank, runs errands, and attends church and has taught classes. She also sews and paints and does other crafts (Exhibit 4E and hearing testimony).

(Tr. 18 (emphasis added); *see also* Tr. 265 ("feels better, less fatigue, 6 more lbs. wt. loss past 3 mo., total nearly 20 lbs., and lost this yr."); Tr. 94-100 (Ms. Brewer's self-reporting the scope of her chores, hobbies, and other activities on her physical activities questionnaire completed on October 4, 2006); Tr. 49 (Ms. Brewer's testifying before the ALJ on September 22, 2008, about her ability to still drive a manual transmission car); Tr. 51 (Ms. Brewer's testifying about sitting on a stool to cook and to wash dishes, and attending church); Tr. 51 ("Most of my housework is

done by my son."); Tr. 52 (Ms. Brewer's testifying about some above ground swimming pool maintenance that she has handled in the past); Tr. 52 ("I didn't even cut the yard this year."); Tr. 52 ("I have four tomato plants that I sit down and tend to."); Tr. 53 ("I taught a class [at church] when I had choir [but stopped] [a]bout two years ago.")).

Therefore, Ms. Brewer's position that the ALJ improperly evaluated her under the Eleventh Circuit pain standard is not well-taken. Instead, Ms. Brewer's reported improvement to Dr. Cheryl Bazzle ("Dr. Bazzle") in how she was feeling as of July 14, 2008, and the extent of the activities that she admitted were a part of her routine in October 2006 as compared to when she testified before the ALJ in September 2008 in a hearing that occurred only a little over two months after her positive report made to Dr. Bazzle, provide specific and sufficient reasons for doubting the claimed disabling degree of Ms. Brewer's subjective allegations. Alternatively, to the extent that the ALJ did not effectively discredit Ms. Brewer's subjective complaints, such error was harmless because substantial evidence otherwise exists in the record to support the ALJ's credibility assessment of her and the related determination that her subject complaints did not render her disabled within the meaning of the Act.

## II.     THE ALJ ADEQUATELY DEVELOPED THE RECORD.

Ms. Brewer also maintains that the ALJ failed to adequately develop the

record. In particular, Ms. Brewer contends that reversible error occurred because:

> Having lost the opportunity to obtain a contemporaneous assessment of RFC by a qualified medical consultant, the ALJ was left with no examining physician medical opinion on which to rely.
>
> The ALJ instead relied on a post-hearing consultative evaluation (CE) performed on October 13, 2008 (R. 352-359) more than one and a half years after the expiry of her date last insured. Moreover, although Dr. Jampala stated that he had reviewed the medical evidence of record provided by the Disability Determination Service (DDS), there is no indication that he did so. There is no itemization of what records were sent or reviewed. The History of Present Illness contains nine lines that lists [sic] "several doctors" with the barest of information about the treatment received, and evidently by patient report. Past Medical History was summarized as: headache, hypertension, obesity, hypothyrodism, hyercholesterolemia, low back pain. (R. 60)

(Doc. 10 at 10-11).

The medical source opinion[6] that Ms. Brewer is referring to is the vocational abilities assessment provided by Dr. Vijay Jampala ("Dr. Jampala") on October 13, 2008, which was subsequent to Ms. Brewer's administrative hearing held on September 22, 2008. Dr. Jampala examined Ms. Brewer in person, reviewed her medical records, and opined that she was capable of performing physical activities that are consistent with light work. (Tr. 352-59).

---

[6] "Medical source statements are 'medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical and mental abilities to perform work-related activities on a sustained basis.'" SSR 96-5p.

13

In arriving at this RFC determination, the ALJ assigned "great weight" and "significant weight" to Dr. Jampala's opinion. (Tr. 18). The ALJ also observed that "Dr. Jampala's opinion is consistent with the evidence of record [and] no[t] inconsistent with any significant evidence." (*Id.*).

In challenging the legitimacy of the ALJ's reliance upon Dr. Jampala's evaluation of Ms. Brewer, she offers no case authority to support her position. Accordingly, the argument presented is perfunctory, underdeveloped, and unpersuasive. *See, e.g., Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (stating that an argument made without citation to authority is insufficient to raise an issue before the court).

Moreover, the court has not been able to independently locate binding authority which suggests that reversible error exists simply because an ALJ orders that a post-hearing consultative examination be performed and then uses the results of that assessment to support his RFC determination. Relatedly, while it may be preferable at times to have "a contemporaneous assessment of RFC by a qualified medical

consultant[,]"[7] cases are frequently remanded for further development of the record as to a claimant's functional capacities and such a subsequent evaluation will, by its very nature, never be contemporaneous. Finally, the ALJ's ordering of a post-hearing consultative examination <u>evidences an intent to develop the record</u>, not a failure to fulfill that obligation.

Therefore, the court concludes that the ALJ did adequately develop the record under the circumstances of this particular case and that no error occurred in his reliance upon Dr. Jampala's vocational conclusions as substantial support for his RFC determination. Alternatively, even if the ALJ did not adequately develop the record by relying upon Dr. Jampala's post-hearing opinion about Ms. Brewer's vocational abilities, such error was harmless because substantial evidence otherwise exists in the record to support the ALJ's determination that Ms. Brewer was not disabled.

## **CONCLUSION**

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is supported by substantial evidence and applies the proper legal standards. Accordingly, the decision of the Commissioner will be affirmed by separate order.

---

[7] The court notes that Ms. Brewer did not offer any medical source statement from one of her treating physicians that substantiated her claimed disabled status, much less a contemporaneous one.

**DONE** and **ORDERED** this the 7th day of December, 2010.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge